DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JEROME HENDERSON,

Petitioner,

v.

BOB GUALTIERI, SHERIFF OF PINELLAS COUNTY,

Respondent.

No. 2D2024-1286

_____

January 17, 2025

Petition for writ of habeas corpus to the County Court in Pinellas County;
Cathy A. McKyton, Judge.

Sara Mollo, Public Defender, and W. Randall Harper, Assistant Public
Defender, Clearwater, for Petitioner.

Ashley Moody, Attorney General, Tallahassee, and Laura Dempsey,
Assistant Attorney General, Tampa, for Respondent.


PER CURIAM.

    Dismissed.

ROTHSTEIN-YOUAKIM and LABRIT, JJ., Concur.
SLEET, C.J., Concurs specially with an opinion in which LABRIT, J.,
Concurs.

SLEET, Chief Judge, Concurring specially.

Jerome Henderson petitions for a writ of habeas corpus, challenging his detention on two pending misdemeanor cases that resulted from the trial court's declaring his bond forfeited and ordering him into custody when he failed to appear in court on the designated date and time of trial. In his petition, Henderson argues that the trial court's revoking his bond and then failing to reinstate it when he appeared in court twenty minutes late was "wholly unjustified." I fully agree with the majority's dismissal of Henderson's petition as he has since resolved those misdemeanor cases, rendering his petition moot. *See Romero v. Green*, 394 So. 3d 207, 210 (Fla. 3d DCA 2024) ("[A]s a general rule, once a person is no longer in custody, a pending petition for writ of habeas corpus is rendered moot."). But I write because although the trial court was required by statute to declare Henderson's bond forfeited once he failed to appear in court as scheduled, it is not clear from the transcript of the hearing whether the trial court understood that it had the discretion to set that ruling aside once Henderson arrived late. Accordingly, I write to address that discretion.

Henderson's cases were set for trial on May 28, 2024, at 8:30 a.m. There is no dispute that he was properly noticed for trial. That day, there were numerous cases on the court's 8:30 and 8:45 dockets. At 8:30, the court called Henderson's case for a status check, and his counsel informed the trial court that Henderson was in transit on a public bus and would appear in court shortly. At 8:40, the trial court canceled the trial—despite the fact that the witnesses and the State were present and ready to proceed—estreated Henderson's bonds, issued a capias, and set new bonds at twice the original amount. The court noted, "I understand he takes a bus, but on this particular day, he should have saved up and taken some other form of transportation if

2

that's what he needed to do to be here on time."  The trial court also stated that if Henderson did arrive during the docket, he would be taken into custody.  Henderson arrived in court at 8:50 a.m. and immediately was taken into custody.  The trial court did not give him an opportunity to explain his late arrival or speak with his counsel.  Addressing the assistant public defender who supervises the misdemeanor division, the court stated:

> Mr. Nelson, we're not speaking with -- with Mr. Henderson who didn't show up.  He's going back to jail. . . .  [Y]ou can make an appointment to speak with him at the jail.  There is no reason for him to be using resources for people to be speaking with him. . . .  He's not being held [in custody in court] so that people can speak with him.  If you want to make an appointment, you can make an appointment to talk to him at the jail.

When setting a new trial date, the court said: "I'm trying to fit him in as quickly as possible . . . because *those bonds are really high and I know he most likely won't be able to bond out.*  So, I want to get him in here as quickly as possible.  *At least, I know he'll be here on time.*" (Emphasis added.)  The court then allowed that if defense counsel wanted to speak with Henderson and "get information about why he wasn't here . . . I'm fine with that.  You guys can do that . . . it is what it is.  I tell him to be here.  *I've always done it this way* and, you know, it's really the only way to keep order."  (Emphasis added.)

Thereafter, defense counsel requested to "put some case law on the record," and the trial court responded:

> You can put an objection on the record and then, if there is some sort of a, you know, something you guys want to do, you can -- they'll cite the case law, but I've already made a decision and so putting things on the record doesn't really accomplish anything because what the appellate court is going to look at is whatever the appellate attorneys write.  So

when you're making a record really, all you need to do is make the objection.

Defense counsel objected to the issuance of the capias and forfeiture of Henderson's bond and cited *Espinal v. Ryan*, 31 So. 3d 818, 819 (Fla. 3d DCA 2010), in support thereof.

By law, if a defendant fails to appear as required, "the court *shall* declare the bond and any bonds or money deposited as bail forfeited." § 903.26(2)(a), Fla. Stat. (2024) (emphasis added). Likewise, "[f]ailure of the defendant to appear at the *time*, date, and place of required appearance *shall* result in forfeiture of the bond." § 903.26(2)(b) (emphasis added). Thus, the trial court's initial actions in response to Henderson's failure to appear in court as directed were required by the statute's mandatory language. *See id.*

However, once Henderson arrived in court twenty minutes late, the trial court was not without options. Section 903.26(2)(b) further provides that "the court may determine, in its discretion, in the interest of justice, that an appearance by the defendant on the same day as required does not warrant forfeiture of the bond" and "may direct the clerk to set aside any such forfeiture which may have been entered." *See generally Ferlita v. State*, 380 So. 2d 1118, 1119 (Fla. 2d DCA 1980) ("Forfeitures are not favored in Florida . . . ."). Accordingly, it was within the trial court's discretion to set aside the forfeiture, allow Henderson to confer with counsel, and proceed to trial or permit the parties to engage in any last-minute plea negotiations.

The trial court's statement that "I've always done it this way and, you know, it's really the only way I can keep order" suggests that the court may not have appreciated the discretion it has to reconsider forfeiture rulings on a case-by-case basis and set aside such a ruling when doing so would be in the interest of justice. *See* § 903.26(2)(b).

4

In fact, the instant case may likely have been one such instance. Here, the court was aware of Henderson's transportation issues, his counsel advised that he would be arriving shortly, all indications were that his late arrival was unintentional, and the parties were otherwise ready for trial. Under these circumstances, it may likely have been in the interest of justice for the trial court to set aside the forfeiture and proceed to trial without depriving Henderson of his liberty, especially when the trial court acknowledged that it was setting bond at an amount so high that Henderson would unlikely be able to pay it. *See Espinal*, 31 So. 3d at 819 ("Although the court was justly annoyed by the defendant's tardiness, it was minimally inconvenienced. A court should be very cautious about depriving a person of his liberty in such a circumstance."); *see also Sewell v. Blackman*, 301 So. 3d 354, 358 (Fla. 2d DCA 2020) ("[I]n this case the circuit court abused its discretion by setting monetary bail in an aggregate amount that is so far beyond Sewell's financial capability that he has no prospect of posting it."); *cf. Hutchinson v. State*, 133 So. 3d 552, 554 (Fla. 2d DCA 2014) (explaining that a trial court's authority to revoke a defendant's pretrial release due to a defendant's late arrival "is not unfettered").

Furthermore, although the forfeiture of the bond was a statutory requirement once Henderson failed to timely appear, nothing in the statute required the trial court to prevent Henderson from conferring with his counsel or barred the court from allowing Henderson to be heard on whether his tardiness was due to a willful act or caused by something beyond his control. To the contrary, the statute provides the court with the discretion to determine whether revoking the bond and taking the defendant into custody is necessary. In determining whether to exercise such discretion, the trial court should consider the

5

circumstances of each individual case, something that arguably would have been easier to do had Henderson been allowed to address the court after consulting counsel.

Additionally, nothing in the statute required the trial court to cancel and reschedule trial due to the twenty-minute delay. While we fully appreciate that county court judges have the heaviest dockets and deal with hundreds of litigants each day, courts should keep in mind the ripple effect of rescheduling trial, which includes inconveniencing the witnesses—some of whom are law enforcement officers—who already have rearranged their schedules to appear and will have to do so again.

It seems to me the interest of justice, as well as judicial economy, would have been better served by setting aside the forfeiture ruling and proceeding with Henderson's trial.

————————————————

Opinion subject to revision prior to official publication.